## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO:

CEASAR BACARELLA,

      Plaintiff,

v.

PRIME HYRDRATION, LLC,

      Defendant.

_____/

## **COMPLAINT**

Plaintiff Caesar Bacarella, through counsel, hereby files his Complaint against Defendant Prime Hydration, LLC as follows:

## **NATURE OF ACTION**

1.     This is a civil action for federal trademark infringement (forward and reverse confusion) and unfair competition under the Lanham Act and for Florida law trademark infringement of Bacarella's **ALPHA PRIME** trademarks.

2.     Plaintiff Bacarella's **ALPHA PRIME** brand includes products such as fitness apparel and sports supplements. This further includes Bacarella's **PRIME BITES** branded protein brownies.

3.     Despite Bacarella's priority rights in the **ALPHA PRIME** and **PRIME BITES** marks, Defendant is selling sports nutrition products and supplements using the name "**PRIME**" (and derivatives thereof). As described in greater detail below, Defendant's use of **PRIME** and its derivatives, falsely suggest affiliation with Bacarella, are confusingly similar to Bacarella's

**ALPHA PRIME** and **PRIME BITES** marks, and despite "PRIME" only being on the market for a short time, multiple instances of actual confusion have been discovered. The result of these confusingly similar products is actual and a likelihood of confusion as to the origin of the products, harming the reputation and goodwill of Bacarella's brand.  Defendant's sale of these infringing products is therefore unlawful and is causing irreparable harm to Bacarella's brand.

4.      Among other relief, Bacarella respectfully asks this Court to: **(a)** preliminarily and permanently enjoin Defendant from distributing, marketing, selling products which are confusingly similar to the **ALPHA PRIME** and **PRIME BITES** marks; **(b)** preliminarily and permanently enjoin Defendant from registering trademarks which are confusingly similar to the **ALPHA PRIME** and **PRIME BITES** marks; **(c)** declare invalid any registered trademarks and trademark applications owned by Defendant, which are confusingly similar to the **ALPHA PRIME** and **PRIME BITES** marks; **(d)** award Bacarella monetary damages and to treble that award; and **(e)** award Bacarella attorney's fees, and costs.

**PARTIES**

5.      Plaintiff Ceaser Bacarella is a Florida resident, located in Broward County, Florida, and is the owner of the **ALPHA PRIME** and **PRIME BITES** marks.

6.      Defendant Prime Hydration LLC is a limited liability company organized under the laws of Kentucky.

**JURISIDCTION AND VENUE**

7.      This is an action pursuant to 15 U.S.C. §§ 1114, 1116, 1121 and 1125(a) and (d). Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

8.      This action also arises under 28 U.S.C.A. § 1332 by reason of diversity of citizenship, and the amount in controversy, exclusive of interests and costs, exceeds the sum or value of $75,000.

9.      This court also has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a) because it is so closely related to the federal claims that they form a single case or controversy.

10.     This Court may exercise personal jurisdiction over Defendant pursuant to Fla. Stat. § 48.193(1) because: (1) Defendant has carried out business activities within Florida, including the sale of products to consumers in Florida; (2) Defendant has committed a tortious act that was designed to and did cause injury in Florida; (3) Defendant has caused injury to persons in within Florida arising from acts or omissions by Defendant outside of Florida, and at the time of injury Defendant was engaged in commercial activities within Florida and products manufactured by Defendant were consumed in Florida in the ordinary course of commerce.

11.     Venue is proper in this Court pursuant 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred here.

## **GENERAL ALLEGATIONS**

**I.      Plaintiff's Trademarks**

12.     Since at least June of 2018, Bacarella, through his companies, has marketed and sold **ALPHA PRIME** branded apparel in the United States, and he has continuously sold **ALPHA PRIME** branded apparel in the United States through interstate commerce since that time.

13.     On June 5, 2018, Bacarella acquired the U.S. trademark registration number 5,487,166 (the "**'166 Mark**") for **ALPHA PRIME** for shirts, shorts, backpacks, beanies, caps with

visors, jackets, tank tops, athletic uniforms, footwear, hoodies, gym tops for weightlifters, racing uniforms, sports equipment bags. *See* **Exhibit A**.

14.     As the owner of the '166 Mark, Bacarella is entitled to the exclusive right to use "**ALPHA PRIME**" for shirts, shorts, backpacks, beanies, caps with visors, jackets, tank tops, athletic uniforms, footwear, hoodies, and sports equipment bags.

15.     Bacarella also acquired the U.S. trademark registration number 5,430,591 (the "'**591 Mark**") for **ALPHA PRIME** for supplements, which holds a U.S. priority date of March 27, 2018.  *See* **Exhibits B and C**.

16.     As the owner of the '591 Mark, Bacarella is entitled to the exclusive right to use "**ALPHA PRIME**" for supplements in the United States.

17.     As the assignee of the '591 Mark, Bacarella steps into the shoes of the assignor and acquired all associated goodwill with the priority date of March 27, 2018.

18.     Further, since acquiring the '591 Mark, Bacarella, through his companies, has marketed and sold **ALPHA PRIME** branded supplements in the United States, and he has continuously sold **ALPHA PRIME** supplements in the United States through interstate commerce since that time.

19.     Bacarella, through his exclusive arrangements with companies, markets, distributes, and sells **ALPHA PRIME** branded supplements through their websites, as well as through GNC.com, Amazon.com, Walmart.com, Vitaminshoppe.com, and retail stores.

20.     As an example, Bacarella's pre-workout product (a supplement) is intended to boost energy.

21.     Since at least September of 2021, Bacarella, through his exclusive arrangements with companies, has marketed and sold **PRIME BITES** branded protein brownies in the United

States, and he has continuously sold **PRIME BITES** branded protein brownies in the Unted States through interstate commerce since that time.

22.     Further, Bacarella has common law rights in the inherently distinctive **PRIME BITES** mark for protein brownies and supplements.

23.     **PRIME BITES** protein brownies are a nationally recognized product in the fitness-wellness space, garnering great success with the consumer base.

24.     Bacarella has invested significant monies into his **ALPHA PRIME** and **PRIME BITES** branded products.

25.     Bacarella has advertised his **ALPHA PRIME** and **PRIME BITES** products on sports-related platforms, sports retail, internet and social media platforms.

26.     Bacarella has established a social media presence using the **ALPHA PRIME** and **PRIME BITES** marks, which has allowed Bacarella to grow his brand exponentially in the fitness, sports, and wellness spaces.

27.     Bacarella maintains a social media presence using Bacarella's **ALPHA PRIME** mark to sell and advertise the **ALPHA PRIME** branded fitness and sports apparel and supplements, including without limitation on the following social media handles:

• @AlphaPrimeSupps

• @AlphaPrimeBites

• @AlphaPrime

28.     Bacarella maintains an online retail presence at www.AlphaPrimeUSA.com, www.AlphaPrimeSports.com, and www.AlphaPrimeSupps.com using Bacarella's **ALPHA PRIME** mark to sell and advertise the **ALPHA PRIME** branded fitness apparel and supplements.

29.     Furthermore, Bacarella maintains a major U.S. retail presence through retailers such as *Walmart*, *The Vitamin Shoppe*, and *Amazon.com* to market and sell **ALPHA PRIME** branded fitness supplements and **PRIME BITES** branded protein brownies.

30.     Through Bacarella's continuous use of the **ALPHA PRIME** and **PRIME BITES** marks, Bacarella has established a nationwide presence in the fitness industry that the consumer market identifies and recognizes.

31.     Bacarella has spent significant sums in advertising and promoting Bacarella's **ALPHA PRIME** and **PRIME BITES** marks throughout the United States and abroad.

32.     As a result of Bacarella consistently selling products bearing the **ALPHA PRIME** and **PRIME BITES** marks, health and sports conscious customers have come to associate the word "PRIME" with Bacarella's brands.

33.     In sum, Bacarella invested heavily in developing the supplements of the **ALPHA PRIME** and **PRIME BITES** brand, and in building the brand through his marketing campaigns.

34.     By virtue of Bacarella's actual and continuous use of the **PRIME BITES** mark throughout the state of Florida, through interstate commerce, and its inherently distinctive name, Bacarella has established common law trademark rights in the **PRIME BITES** mark.

35.     Furthermore, through the efforts of the Plaintiff, **PRIME BITES** has achieved secondary meaning with the fitness and sports consuming public as an identifier of protein brownies. The **PRIME BITES** mark has come to designate Bacarella's goods, so that the goodwill represented by the mark is of great value to Bacarella.

36.     Sports supplements, protein brownies, energy drinks, and sports drinks appeal to the same classes of consumers.

## II.   DEFENDANT'S INFRINGING PRODUCTS

37.     On November 23, 2022, well after Bacarella's **ALPHA PRIME** and **PRIME BITES** marks and goods were prominently used and sold in the market, Defendant filed an intent to use (Section 1B) trademark application with the USPTO for the mark "PRIME" (U.S. Serial No. 97689601) for use with supplements, energy drinks, and sport drinks.[1]

38.     On May 1, 2023, Defendant filed two an intent to use (Section 1B) trademark applications with the USPTO for the mark "PRIME" (U.S. Serial No. 97915701;[2] U.S. Serial No. 97,914,816[3]) for use with sports bags and athletic apparel.

39.     Defendant currently sells supplements, energy drinks and sports drinks (the "**Infringing Products**") using the mark "PRIME" via Defendant's website, www.drinkprime.com.

40.     Defendant's target customers for its Infringing Products includes consumers in the fitness and sports industry and are the same target consumers for Bacarella.

---

[1] On November 23, 2022, Defendant filed an application with the USPTO for the mark "PRIME", U.S. Serial No. 97689601, for "nutritional supplements; powdered nutritional supplement drink mix containing protein; dietary supplements; protein supplement shakes; whey protein supplements; dietary supplements for pre-workout; protein supplements formed and packaged as bars" in class 5 and "sparkling water; energy drinks; sports drinks; powders used in the preparation of isotonic sports drinks; sports beverages and ready to drink beverages, namely, isotonic beverages" in class 32.

[2] On May 1, 2023, Defendant filed an application with the USPTO for the mark "PRIME", U.S. Serial No. 97915701, for "key chains" in class 14, "all-purpose sport bags for use by athletes; backpacks; duffel bags" in class 18; "Water bottles sold empty; shaker bottles sold empty; non-electric portable coolers; beverage glassware; tumblers for use as drinking glasses" in class 21; and "clothing apparel, namely, shirts, t-shirts, sweaters, hoodies, sweatshirts, pants, sweat pants, tank tops, dresses, skirts, jackets, leggings; athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps; hats; beanies; headbands; gloves; swim trunks; sweatbands" in class 25.

[3] On May 1, 2023, Defendant filed an application with the USPTO for the mark "PRIME", U.S. Serial No. 97914816, for "key chains" in class 14; "water bottles sold empty; shaker bottles sold empty; non-electric portable coolers; beverage glassware; tumblers for use as drinking glasses" in class 21; and "clothing apparel, namely, shirts, t-shirts, sweaters, hoodies, sweatshirts, pants, sweat pants, tank tops, dresses, skirts, jackets, leggings; athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps; hats; beanies; headbands; gloves; swim trunks; sweatbands" in class 25.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

41.     Indeed, Defendant's Infringing Products are the same for purposes of the goods and services category description as Bacarella.

42.     Further, the target audience for Bacarella and Defendant are the same type of consumers.

43.     Currently, Defendant's PRIME supplements, energy drinks, and sports drinks prominently feature the "PRIME" name. Upon information and belief, while Defendant does not currently sell sports bags and athletic apparel bearing the "PRIME" name, Defendant has indicated its intent to do so.

44.     Further, "**ALPHA PRIME**" is pronounced and sounds similar to Defendant's "PRIME" name. They differ only in the addition of the word "alpha". However, the core word is "PRIME," hence why it is carried over to **PRIME BITES**.

45.     To date, Defendant continues to sell the Infringing Products on its website and third-party websites and brick-and-mortar locations.

46.     To date, Defendant continues to promote the Infringing Products on Defendant's social media accounts, in addition to third-party accounts.

47.     Defendant is trading on the goodwill and hard-earned reputation of the **ALPHA PRIME** and **PRIME BITES** marks by using a confusingly similar mark.

48.     A consumer who is familiar with Plaintiff's **ALPHA PRIME** sports supplements and **PRIME BITES** protein brownies might well buy a **PRIME** energy drink without any thought, merely assuming because of the highly similar mark, same industry, and same target market, that that the goods emanate from the same source. Likewise, a consumer who is familiar with Defendant's **PRIME** energy drink may come to believe that Plaintiff's use of **ALPHA PRIME** and/or **PRIME BITES** for sports supplements is affiliated with Defendant.

49.     Defendant also markets and advertises the Infringing Products through social media platforms, such as Instagram, Facebook, and X (formerly Twitter).

50.     Defendant also markets and advertises the Infringing Products through the same retailers as Bacarella including *Walmart*, *Vitamin Shoppe*, and *Amazon.com*.

51.     Defendant's "PRIME" name, when considering the overall impression created by the name, leads to a conclusion that the name is similar to, or affiliated with, Bacarella's ALPHA PRIME mark when considering the sound, appearance, and manner in which each mark is used.

52.     Further, the appearance and sound of "PRIME" in each mark is sufficient to find the marks similar.

53.     Defendant's "PRIME" name, when considering the products offered thereunder (supplements, energy drinks, sports drinks, apparel, and sports bags), and compared to Bacarella's supplements, apparel and protein brownies, leads to a conclusion that the products are affiliated with Bacarella.

54.     Defendant's "PRIME" name, when considering the target customer base and sales outlets for its products, and compared to Bacarella's sales outlets and customers for supplements, apparel and protein brownies, leads to a conclusion that there is an affiliation with Bacarella.

55.     Defendant's "PRIME" name, when considering the advertising, and compared to Bacarella's advertising for supplements, apparel and protein brownies, leads to a conclusion that there is an affiliation with Bacarella.

56.     Bacarella has notified Defendant, through counsel, of his claims for trademark infringement. Nevertheless, despite Bacarella's rights, Defendant continues to operate business using a confusingly similar mark. To protect its rights in the **ALPHA PRIME** and **PRIME BITES** marks, Bacarella brings this legal action.

57.     All conditions precedent have occurred, been waived or have otherwise been satisfied.

## <u>COUNT I</u>
15 USC § 1114(a)
Federal Trademark Infringement

58.     Bacarella incorporates by reference each and every allegation contained in Paragraphs 1 through 57 as though fully set forth herein.

59.     Bacarella is the owner of the federally registered trademarks **ALPHA PRIME** (the '166 Mark) and **ALPHA PRIME** (the '591 Mark), which are valid and enforceable.

60.     Bacarella has used the **ALPHA PRIME** mark in commerce in connection with numerous different types of fitness apparel items, including, but not limited to sports clothing and gear, backpacks, and sport bags.

61.     Bacarella has also used the **ALPHA PRIME** mark in commerce in connection with supplements.

62.     Bacarella has priority of use in the **ALPHA PRIME** mark which is senior to any possible priority date Defendant may assert in the PRIME mark.

63.      Defendant's use of the PRIME mark, and confusingly similar marks, with the full knowledge of **ALPHA PRIME**'s superior rights, and with full knowledge that its infringing use of the PRIME mark was intended to cause confusion, mistake and/or deception by creating the false and misleading impression that Defendant's Infringing Product is manufactured or distributed by Bacarella's **ALPHA PRIME** or is associated, affiliated, or connected with **ALPHA PRIME**, has the sponsorship, endorsement, approval of **ALPHA PRIME**, in violation of 15 U.S.C. § 1114.

64.     Defendant acted herein without consent from Plaintiff.

65.     As a result of Defendant's infringement, Bacarella has suffered damages, as well as continuing loss of the goodwill and reputation established by the **ALPHA PRIME** brand. The continuing loss of **ALPHA PRIME**'s goodwill and reputation established in Bacarella's federally registered marks cannot be properly or easily calculated and thus constitutes irreparable harm and an injury for which Bacarella has not adequate remedy at law. Bacarella will continue to suffer irreparable harm unless this Court enjoins Defendant's conduct.

66.     Upon information and belief, Defendant had the intent of driving a benefit from Bacarella as to its use of the "PRIME" name.

67.     By reason of Defendant's willful acts, Bacarella is also entitled to damages, including but not limited to treble damages, under 15 U.S.C. § 1117.

68.     Defendant has caused and is likely to continue causing substantial injury to the public and to Bacarella, and Bacarella is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and treble damages, costs, and reasonable attorneys' fees under 15 U.S.C §§ 1114, 1116, and 1117. Monetary relief is not sufficient to fully address the irreparable injury that Defendant's unlawful use of the "PRIME" name has caused and will continue to cause Bacarella, absent an injunction. Accordingly, Bacarella is entitled to preliminary and permanent injunctive relief.

### COUNT II
15 USC § 1114(a)
Federal Trademark Infringement – Reverse Confusion

69.     Bacarella incorporates by reference each and every allegation contained in Paragraphs 1 through 57 as though fully set forth herein.

70.     Bacarella is the owner of the federally registered trademarks **ALPHA PRIME** (the '166 Mark) and **ALPHA PRIME** (the '591 Mark), which are valid and enforceable.

71.     Bacarella has used the **ALPHA PRIME** mark in commerce in connection with numerous different types of fitness apparel items, including, but not limited to, sports clothing and gear, backpacks, and sport bags.

72.     Bacarella has also used the **ALPHA PRIME** mark in commerce in connection with supplements.

73.     Bacarella has priority of use in the **ALPHA PRIME** mark which is senior to any possible priority date Defendant may assert in the **PRIME** mark.

74.      Defendant's use of the PRIME mark, and confusingly similar marks, with the full knowledge of **ALPHA PRIME**'s superior rights, and with full knowledge that its infringing use of the PRIME mark was intended to cause confusion, mistake and/or deception by creating the false and misleading impression that Defendant's Infringing Product is manufactured or distributed by Bacarella's **ALPHA PRIME** or is associated, affiliated, or connected with **ALPHA PRIME**, has the sponsorship, endorsement, approval of **ALPHA PRIME**, in violation of 15 U.S.C. § 1114.

75.     Defendant has infringed on Bacarella's federally registered marks in interstate commerce by engaging in the nationwide sale of its Infringing Products under the "PRIME" name and a massive, national advertising campaign, encompassing print, television, in-person promotional events, internet, and social media advertising. Each of these advertisements bears the "PRIME" name, which is confusingly similar to Bacarella's **ALPHA PRIME** marks.

76.     Defendant's marketing obtained extensive and rapid exposure through social media channels and partnerships with professional athletes to quickly saturate the marketplace with advertisements and promotions for its Infringing Products. This action ensured the media, general public, and relevant consumers, would come to associate the confusing name "PRIME" with Defendant. Though Bacarella invested heavily in the social media marketing and promotion of

**ALPHA PRIME**, it could not come close to matching Defendant's ability to reach so many consumers in such a small amount of time.

77.     The confusion caused by Defendant includes "reverse confusion," meaning that consumers are likely to associate, or have associated, Bacarella's ALPHA PRIME marks with Defendant, rather than Bacarella.

78.     Defendant's actions have and will likely continue to lead consumers to incorrectly conclude that Bacarella's supplements or apparel originate from or somehow have become connected with Defendant, which will damage Bacarella and the public.

79.     To date, such reverse confusion has caused consumers to associate Bacarella's supplements with Defendant.

80.     In fact, Defendant's infringement of the **ALPHA PRIME** marks have already caused instances of confusion among consumers.

81.     Defendant's immersive advertising campaign has generated quick sales results.

82.     Defendant acted herein without consent from Bacarella.

83.     As a result of Defendant's infringement, Bacarella has suffered damages, as well as continuing loss of the goodwill and reputation established by the **ALPHA PRIME** brand. The continuing loss of **Alpha Prime's** goodwill and reputation established in Bacarella's federally registered marks cannot be properly or easily calculated and thus constitutes irreparable harm and an injury for which Bacarella has not adequate remedy at law. Bacarella will continue to suffer irreparable harm unless this Court enjoins Defendant's conduct.

84.     By reason of Defendant's willful acts, Bacarella is also entitled to damages, including but not limited to treble damages, under 15 U.S.C. § 1117.

85.     Defendant has caused and is likely to continue causing substantial injury to the public and to Bacarella, and Bacarella is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and treble damages, costs, and reasonable attorneys' fees under 15 U.S.C §§ 1114, 1116, and 1117. Monetary relief is not sufficient to fully address the irreparable injury that Defendant's unlawful use of the "PRIME" name has caused and will continue to cause Bacarella, absent an injunction. Accordingly, Bacarella is entitled to preliminary and permanent injunctive relief.

**COUNT III**
15 USC § 1125(a)
Unfair Competition and False Designation of Origin

86.     Bacarella incorporates by reference each and every allegation contained in Paragraphs 1 through 57 as though fully set forth herein.

87.     Bacarella is the owner of all common law rights in and to the **ALPHA PRIME** and **PRIME BITES** marks.

88.     Bacarella has priority in the use of the **ALPHA PRIME** and **PRIME BITES** marks that is superior to any priority date Defendant will rely on in connection with the use of the PRIME mark.

89.     The **ALPHA PRIME** mark is inherently distinctive, or in the alternative, has acquired secondary meaning among consumers as a source identifier, thus establishing protectability of the **ALPHA PRIME** mark.

90.     The **PRIME BITES** mark is inherently distinctive, or in the alternative, has acquired secondary meaning among consumers as a source identifier, thus establishing protectability of the **PRIME BITES** mark.

91. Defendant's unauthorized and unlawful use of the "PRIME" name for its products has caused, and is likely to cause, confusion, including reverse confusion, among consumers as to Bacarella's affiliation, connection, or association with Defendant and its PRIME products. These acts constitute unfair competition and false designation of origin in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

92. Defendant's unauthorized and tortious conduct constitutes a false designation or origin and false description or representation that Bacarella certifies the quality and authenticity of the infringing products, when in fact Bacarella and the **ALPHA PRIME** brand do not.

93. Defendant's unauthorized and tortious conduct has also deprived and will continue to deprive Bacarella of the ability to control the consumer perception of the products offered under the **ALPHA PRIME** brand and their respective marks, placing the valuable reputation and goodwill of Bacarella in the hands of the Defendant.

94. Defendant's acts were knowing, deliberate, and willful.

95. As a result of Defendant's unauthorized and unlawful use of the "PRIME" name, Bacarella has been damaged.

96. Further, Defendant has profited from its wrongful conduct.

97. Defendant's intentional and willful infringement is exceptional, and Bacarella is entitled to reasonable attorney's fees that he has incurred in protecting his rights.

98. Defendant has caused and is likely to continue causing substantial injury to the public and to Bacarella, and Bacarella is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and treble damages, costs, and reasonable attorneys' fees under 15 U.S.C §§ 1114, 1116, and 1117.

99.     Monetary relief is not sufficient to fully address the irreparable injury that Defendant's unlawful use of the "PRIME" name has caused and will continue to cause Bacarella, absent an injunction. Accordingly, Bacarella is entitled to preliminary and permanent injunctive relief.

## <u>COUNT IV</u>
Florida Trademark Infringement

100.    Bacarella incorporates by reference each and every allegation contained in Paragraphs 1 through 57 as though fully set forth herein.

101.    Bacarella is the owner of all common law rights in and to the **ALPHA PRIME** and **PRIME BITES** marks.

102.    Bacarella has priority in the use of the **ALPHA PRIME** and **PRIME BITES** marks that is superior to any priority date Defendant will rely on in connection with the use of the PRIME mark.

103.    The **ALPHA PRIME** mark is inherently distinctive, or in the alternative, has acquired secondary meaning among consumers as a source identifier, thus establishing protectability of the **ALPHA PRIME** mark.

104.    The **PRIME BITES** mark is inherently distinctive, or in the alternative, has acquired secondary meaning among consumers as a source identifier, thus establishing protectability of the **PRIME BITES** mark.

105.    Defendant's use of the PRIME mark in its marketing and sale of Defendant's Infringing Product is likely to cause confusion or mistake as to the source or origin of the Infringing Product.

106.    Defendant has deliberately and willfully advertised and attempted to trade on Bacarella's longstanding and hard-earned goodwill in the **ALPHA PRIME** brand and respective marks, in order to confuse consumers as to the origin, affiliation, or sponsorship of Defendant's Infringing Product and to pass off the infringing product as those of Bacarella.

107.    Defendant's conduct is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with the **ALPHA PRIME** brand, and as to the origin, sponsorship, or approval of Defendant's Infringing Product, in violation of Florida Common Law.

108.    Defendant has intentionally advertised and offered for sale Defendant's Infringing Product in a manner likely to cause confusion or mistake as so as to confuse and deceive clients, potential customers, and the community at large, as to the origin and/or affiliation of Defendant's Infringing Product, based upon the merit, reputation, and goodwill of the well-established **ALPHA PRIME** brand.

109.    Defendant has received revenues and profits as a result of its trademark infringement to which Defendant is not entitled. Accordingly, Defendant has unfairly profited from the actions alleged herein.

110.    As a result of Defendant's aforementioned conduct, Bacarella has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Bacarella in his marks. This continuing loss of goodwill cannot be properly or easily calculated and thus constitutes irreparable harm and an injury for which Bacarella has not adequate remedy at law. Bacarella will continue to suffer irreparable harm unless this Court enjoins Defendant's conduct.

## <u>COUNT V</u>
### Declaratory Judgment of Violation of 15 U.S.C. §1114
(Due to Likelihood of Confusion)

111.    Bacarella incorporates by reference each and every allegation contained in Paragraphs 1 through 85 as though fully set forth herein.

112.    Bacarella seeks a declaration of likelihood of confusion of 15 U.S.C. § 1114(1), because Defendant's following trademark applications and registrations will, and have, caused harm to Bacarella.

### *DRINK PRIME*

113.    On May 1, 2023, Defendant filed an application with the USPTO for the "DRINK PRIME" mark, U.S. Serial No. 97,915,703,

A.    for "air deodorizing preparations," in class 5,

B.    "key chains," in class 14;

C.    "stickers," in class 16;

D.    "all-purpose sports bags for use by athletes; all-purpose carrying bags; backpacks; duffle bags" in class 18;

E.    "water bottles sold empty; shaker bottles sold empty; non-electric portable coolers; beverage glassware; tumblers for use as drinking glasses," in class 21, and

F.    "apparel, namely, shirts, t-shirts, sweaters, hoodies, sweatshirts, pants, sweat pants, tank tops, dresses, skirts, jackets, leggings; athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps; hats; beanies; headbands; gloves; swim trunks; sweatbands," in class 25.

114.    The application for the above "DRINK PRIME" name was filed on an intent-to-use basis and is currently still pending before the USPTO.

115.    On April 24, 2023, Defendant filed an application with the USPTO for the "DRINKPRIME" mark, U.S. Serial No. 97903888, for "energy drinks; powders used in the preparation of isotonic sports drinks and sports beverages; sports drinks," in class 32.

116.    The application for the DRINKPRIME mark was filed on an intent-to-use basis and is currently still pending before the USPTO.

117.    The allowance of the "DRINK PRIME" mark will likely cause damage to Bacarella and the **ALPHA PRIME** marks in the form of likelihood of confusion and false designation of origin.

118.    The allowance of the "DRINKPRIME" name will likely cause damage to Bacarella and the **ALPHA PRIME** marks in the form of likelihood of confusion and false designation of origin.

119.    Defendant's "DRINKPRIME" and "DRINK PRIME" mark resembles, and is confusingly similar, to Bacarella's **ALPHA PRIME** mark.

120.    Defendant's "DRINKPRIME" and "DRINK PRIME" mark resembles, and is confusingly similar, to Bacarella's **PRIME BITES** mark.

121.    Upon information and belief, Defendant neither uses the "DRINK PRIME" name in commerce nor as a trademark.

122.    Upon information and belief, Defendant neither uses the "DRINKPRIME" name in commerce nor as a trademark.

***PRIME HYDRATION***

123.    On November 8, 2022, the USPTO issued Defendant U.S. Registration No. 6,892,538 for PRIME HYDRATION for "sports drinks" in Class 32.

124.    Upon information and belief, the Defendant neither uses the Paragraph 123 "PRIME HYDRATION" name in commerce nor as a trademark.

125.    On October 17, 2023, the USPTO issued Defendant U.S. Registration No. 7,197,040 for PRIME HYDRATION for "powders used in the preparation of isotonic sports drinks and sports beverages" in Class 32.

126.    Upon information and belief, the Defendant neither uses the Paragraph 125 "PRIME HYDRATION" mark in commerce nor as a trademark.

127.    On October 31, 2023, Defendant filed an application with the USPTO for the "PRIME HYDRATION +" mark, U.S. Serial No. 98,248,287, for "powders used in the preparation of isotonic sport drinks and sports beverages" in class 32.

128.    Defendant filed this application on an actual use (Section 1(a)) basis, claiming the "PRIME HYDRATION+" mark was first used in commerce in September 2022.

129.    Upon information and belief, the Defendant neither uses the Paragraph 128 "PRIME HYDRATION+" mark in commerce nor as a trademark.

***PRIME ENERGY***

130.    On June 6, 2023, the USPTO issued Registrant U.S. Registration No. 7,076,880 for PRIME ENERGY for "energy drinks" in Class 32.

131.    Upon information and belief, the Defendant neither uses the Paragraph 130 "PRIME ENERGY" mark in commerce nor as a trademark.

132. This court should find as insufficient the Defendant's statement of use and commercial use of the marks stated in Paragraphs 123, 125, and 130.

133. Bacarella's priority date in the **ALPHA PRIME** mark precedes any date of first use or constructive use of Defendant's aforementioned marks, and any priority upon which Defendant may claim to rely.

134. Bacarella's priority date in the **PRIME BITES** mark precedes any date of first use or constructive use of Defendant's aforementioned marks, and any priority upon which Defendant may claim to rely.

135. Each of Defendant's applied-for marks in Paragraphs 113, 115, 123, 125, 127, and 130, when considering the overall impression created of each mark in Paragraphs 113, 115, 123, 125, 127, and 130, leads to a conclusion that each mark is similar to Bacarella's **ALPHA PRIME** mark when considering the sound, appearance, and manner in which each mark is used.

136. Further, the appearance and sound of "PRIME" in each mark is sufficient to find the marks similar.

137. Each of Defendant's applied-for marks in Paragraphs 113, 115, 123, 125, 127, and 130, when considering the products offered thereunder, and compared to Bacarella's supplements, apparel and protein brownies, leads to a conclusion that the products are similar.

138. Each of Defendant's applied-for marks in Paragraphs 113, 115, 123, 125, 127, and 130, when considering the target customer base and sales outlets for such products, and compared to Bacarella's sales outlets and customers for supplements, apparel and protein brownies, leads to a conclusion that there is a similarity in sales outlets.

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

139.    Each of Defendant's applied-for marks in Paragraphs 113, 115, 123, 125, 127, and 130, when considering the advertising, and compared to Bacarella's advertising for supplements, apparel and protein brownies, leads to a conclusion that there is a similarity in advertising.

140.    Upon information and belief, Defendant had the intent of deriving a benefit from Bacarella as to each of Defendant's applied-for marks in Paragraphs 113, 115, 123, 125, 127, and 130.

141.    Defendant's registration for, and use or proposed use of Defendant's marks described in Paragraphs 113, 115, 123, 125, 127, and 130, is without Bacarella's consent or permission. Bacarella believes that he is or will be damaged by Defendant's aforementioned marks under the meaning of 15 U.S.C. § 1064.

## COUNT VI
15 USC §§ 1064 and 1119
Cancellation of U.S. Registration No. 6,892,538

142.    Bacarella incorporates by reference each and every allegation contained in Paragraphs 1 through 57 and 112-41 as though fully set forth herein.

143.    Defendant claims ownership of the '538 Registration for the term "PRIME HYDRATION."

144.    The '538 Registration is registered on the Principal Register.

145.    Defendant's PRIME HYDRATION name resembles, and is confusingly similar, to Plaintiff's **ALPHA PRIME** mark.

146.    Bacarella has rights in the mark **ALPHA PRIME** which are prior and superior to any rights Defendant may have in the PRIME HYDRATION mark.

147.     The **ALPHA PRIME** mark is inherently distinctive, or in the alternative, has acquired secondary meaning among consumers as a source identifier, thus establishing protectability of the **ALPHA PRIME** mark.

148.     Defendant's identified goods associated with the PRIME HYDRATION mark are legally the same and/or highly similar to Bacarella's goods, as dietary supplements and sports drinks appeal to the same class of consumers.

149.     Defendant's trade channels for the PRIME HYDRATION mark are the same as trade channels used by Bacarella for the **ALPHA PRIME** mark.

150.     Defendant's use of the PRIME HYDRATION mark as a trademark is likely to cause confusion, mistake, and to deceive by creating the erroneous impression that Defendant's goods originate from, are affiliated, or are associated with, Bacarella, or that Defendant's goods are authorized, endorsed, or sponsored by Plaintiff.

151.     Bacarella is being damaged by the continued registration of the '538 registration.

152.     Also, Defendant's specimen in its registration does not use the composite word "PRIME HYDRATION" in interstate commerce as a trademark because the composite word is not used as a source identifier. Thus, the mark is not in use.

153.     The registration of PRIME HYDRATION as a trademark violates and diminishes the prior and superior rights of Bacarella and is in violation of 15 U.S.C. § 1052(d).

Intentionally Left Blank

<u>**COUNT VII**</u>
15 USC §§ 1064 and 1119
Cancellation of U.S. Registration No. 7,197,040

154.    Bacarella incorporates by reference each and every allegation contained in Paragraphs 1 through 1 through 57 and 112-41 as though fully set forth herein.

155.    Defendant claims ownership of the '040 Registration for the term "PRIME HYDRATION."

156.    The '040 Registration is registered on the Principal Register.

157.    Defendant's PRIME HYDRATION mark resembles, and is confusingly similar, to Bacarella's **ALPHA PRIME** mark.

158.    Bacarella has rights in the mark **ALPHA PRIME** which are prior and superior to any rights Defendant may have in the PRIME HYDRATION name.

159.    The **ALPHA PRIME** mark is inherently distinctive, or in the alternative, has acquired secondary meaning among consumers as a source identifier, thus establishing protectability of the **ALPHA PRIME** mark.

160.    Defendant's identified goods associated with the **PRIME ENERGY** mark are legally the same and/or highly similar to Bacarella's goods, as dietary supplements and powders used in the preparation for isotonic sports drinks appeal to the same class of consumers.

161.    Defendant's trade channels for the **PRIME HYDRATION** mark are the same as trade channels used by Bacarella for the **ALPHA PRIME** mark.

162.    Defendant's use of the **PRIME HYDRATION** mark as a trademark is likely to cause confusion, mistake, and to deceive by creating the erroneous impression that Defendant's goods originate from, or are associated with, Bacarella, or that Defendant's goods are authorized, endorsed, or sponsored by Bacarella.

163.     Bacarella is being damaged by the continued registration of the '040 registration.

164.     Also, Defendant's specimen in its registration does not use the composite word "PRIME HYDRATION" in interstate commerce as a trademark because the composite word is not used as a source identifier. Thus, the mark is not in use.

165.     The registration of PRIME HYDRATION as a trademark violates and diminishes the prior and superior rights of Bacarella and is in violation of 15 U.S.C. § 1052(d).

## COUNT VII
15 USC §§ 1064 and 1119
Cancellation of U.S. Registration No. 7,076,880

166.     Bacarella incorporates by reference each and every allegation contained in Paragraphs 1 through 1 through 57 and 112-41 as though fully set forth herein.

167.     Defendant claims ownership of the '880 Registration for the term "PRIME ENERGY".

168.     The '880 Registration is registered on the Principal Register.

169.     Defendant's PRIME ENERGY mark resembles, and is confusingly similar, to Bacarella's ALPHA PRIME mark.

170.     Bacarella has rights in the mark **ALPHA PRIME** which are prior and superior to any rights Defendant may have in the PRIME ENERGY mark.

171.     The **ALPHA PRIME** mark is inherently distinctive, or in the alternative, has acquired secondary meaning among consumers as a source identifier, thus establishing protectability of the **ALPHA PRIME** mark.

172.     Defendant's identified goods associated with the PRIME ENERGY mark are legally the same and/or highly similar to Bacarella's goods, as dietary supplements and energy drinks appeal to the same class of consumers.

173.     Upon information and belief, Defendant's trade channels for the PRIME ENERGY mark are the same as trade channels used by Bacarella for the **ALPHA PRIME** mark.

174.     Defendant's use of the PRIME ENERGY mark as a trademark is likely to cause confusion, mistake, and to deceive by creating the erroneous impression that Defendant's goods originate from, or are affiliated or associated with, Bacarella, or that Defendant's goods are authorized, endorsed, or sponsored by Bacarella.

175.     Bacarella is being damaged by the continued registration of the '880 registration.

176.     Also, Defendant's specimen in its registration does not use the composite word "PRIME HYDRATION" in interstate commerce as a trademark because the composite word is not used as a source identifier. Thus, the mark is not in use.

177.     The registration of **PRIME ENERGY** as a trademark violates and diminishes the prior and superior rights of Bacarella and is in violation of 15 U.S.C. § 1052(d).

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, CAESAR BACARELLA, respectfully request that this Court grant the following relief:

a.      Enter Final Judgment cancelling Defendant's marks for U.S. Reg. No. 6,892,538, U.S. Registration No. 7,197,040, and U.S. Registration No. 7,076,880, and directing the Director of the United States Patent and Trademark Office to remove such registration from the Principal Register;

b.      Enter Final Judgment cancelling Defendant's applications for U.S. Serial No. 97,915,703, U.S. Serial No. 97903888, U.S. Serial No. 98,248,287, U.S. Serial No. 97,689,601, U.S. Serial No. 97,915,701, and U.S. Serial No. 97,914,816, and directing the Director of the United States Patent and Trademark Office to deem abandoned each application;

c.     Award damages in accordance with the claims raised above, pursuant to 15 U.S.C. §§ 1114, 1116, and 1117 and all applicable common law authority;

d.     Award Plaintiff's reasonable attorneys' fees and costs incurred in this action;

e.     Temporarily and permanently enjoin and restrain Defendant, PRIME HYDRATION, LLC, and its officers, agents, representatives, servants, employees, attorneys, successors and assignees, and others in active concert or participation with Defendant from registering, advertising, using, marketing, trafficking, promoting, offering for sale, distributing or selling in any name that is confusingly similar to the ALPHA PRIME marks in conjunction with the infringing products.

f.     Order Defendant be compelled to account to Bacarella for any and all profits derived by Defendant from the sale of the infringing products.

g.     Order that based on Defendant's willful and deliberate infringement of Bacarella's **ALPHA PRIME** marks, Bacarella be awarded punitive damages, including treble and/or elevated statutory damages pursuant to 15 U.S.C. § 1117;

h.     Order Defendant to disgorge all ill-gotten gains; and

i.     Grant such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, CAESAR BACARELLA, pursuant to Rule 38 of the Federal Rules of Civil

Procedure, hereby demands a trial by jury on all issues so triable.

**COLE, SCOTT & KISSANE, P.A.**
*Counsel for Caesar Bacarella*
Cole, Scott & Kissane Building
9150 South Dadeland Boulevard, Suite 1400
P.O. Box 569015
Miami, Florida 33256
Telephone (786) 268-6752
Primary e-mail: justin.levine@csklegal.com
Secondary e-mail: justin.maya@csklegal.com

**By:**   s/ Justin B. Levine
JUSTIN B. LEVINE
Florida Bar No. 106463
JUSTIN S. MAYA
Florida Bar No.:  126087
Nicholas M. Nash II.
Florida Bar No.: 1017063